29646. JACOBSON *v.* THE STATE.

Decided September 11, 1942.

*Rosser & Rosser, Hale & Hale, George W. Westmoreland,* for plaintiff in error.

*J. H. Paschall, solicitor-general, J. M. C. Townsend,* contra.

BROYLES, C. J. (After stating the foregoing facts.) The evidence set forth in the transcript of the record substantially supported the allegations of the indictment, except the allegation that the unlawful act of the accused was maliciously done. In *Wells* v. *State,* 46 *Ga. App.* 412 (167 S. E. 709), the headnote reads as follows: "A conviction of involuntary manslaughter in the commission of an unlawful act was authorized by the evidence, from which it appeared that the deceased, a convict working in the sun on a public highway on a very hot June day, 'gave out' and fell from the 'wheeler' he was driving, and that the defendant, who was a convict guard, and another guard, made him get up and walk to a telephone pole and handcuffed him to it, and that in a few minutes he slumped down apparently unconscious and was taken to a camp, where he soon died of sunstroke. The jury were authorized to find, under the evidence and the defendant's statement, that the defendant was guilty of an assault and battery on the deceased, which contributed to and accelerated the death, and

were its proximate cause, without any intention so to kill." Applying that ruling to the facts of this case, we hold that the jury were authorized to find that the unlawful and inhumane act of the accused in so incarcerating Gordon and twenty-one other convicts amounted to an assault and battery upon Gordon, which contributed to and accelerated his death, and which was the proximate cause thereof, without any intention of the accused to kill him. While there was no positive evidence from the physicians who testified as to the cause of Gordon's death, the evidence as a whole authorized the jury to find that said unlawful act of the accused was the proximate cause thereof.

It is contended by counsel for Jacobson that the evidence showed that when Gordon was released from "the sweat-box" several convicts picked him up and held him under a cold shower bath, and that the cold water was the probable cause of his death. We have carefully read all of the evidence and we find that the above-stated evidence was in sharp conflict, some witnesses testifying that Gordon was given the cold water bath and others that he was not; and, therefore, whether Gordon was given such a bath was an issue of fact to be determined by the jury. However, assuming that he was given the cold-water treatment, it was still an issue of fact whether that treatment or the unlawful and inhumane incarceration was the proximate cause of his death, and the evidence authorized the jury to find that his death was caused by his confinement for many hours in the sweat-box without. adequate air or water and by the excessive heat in such box. The court did not err in overruling the general grounds of the motion for new trial.

Special ground 1 complains of the failure of the court to charge upon the credibility of witnesses. The ground, failing to allege that such a charge was requested, is without merit. Special ground 3 complains that during the trial one of the jurors had a paper in his hand, and the judge asked him what it was, and the juror replied that it was the *Chattanooga Times* of that date. The judge told the juror and the jury that they must not read the paper if it carried any account of the trial. The ground does not even allege that the paper carried any account of the trial, and is without merit. Special ground 4 complains that in no part of his charge did the judge explain to the jury that they could find

the defendant guilty as charged and recommend him to the mercy of the court. The defendant was charged with murder and convicted of the lesser crime of involuntary manslaughter. Therefore, the failure of the court to charge upon any branch of the law of murder was evidently not harmful to the accused. Furthermore, the record shows that at or near the beginning of the trial, the court informed counsel for the accused in open court that the State did not ask for the supreme penalty, to wit, death by electrocution. The ground is without merit. Special ground 5 complains that during the selection of the jury, the solicitor-general failed to ask the first prospective juror the following question: "Are you conscientiously opposed to capital punishment?" Whereupon counsel for movant asked the court why the question had not been propounded to the juror. The judge replied in effect that the State had consented, in the event of a conviction for murder, that the verdict would automatically carry a recommendation for mercy, and therefore it was unnecessary to ask the jurors whether they were opposed to capital punishment. None of the jurors was asked that question. The ground fails to show error. The evidence objected to in special ground 6, under the facts of the case, was admissible to show the motive and intent of the movant in shutting up Gordon and the twenty-one other convicts in the sweat-box for about seven hours without adequate air and water. Special ground 7 alleges that upon the cross-examination of a member of the Prison Commission "the solicitor-general asked this question: 'And I also told you that in my opinion that was the most inhuman thing that I had ever seen?' Whereupon counsel for movant objected to that and asked the court to declare a mistrial." The court immediately stated: "I instruct the jury to disregard the statement made by the solicitor-general as to what his opinion was, whether it was inhuman or not, and erase that from your minds, and be guided solely by the evidence as delivered by the witnesses from the witness stand, as well as by the defendant's statement, if such be made, and under the rules of law given you in charge, and let that alone control you in arriving at your verdict. With that I will overrule the motion for mistrial." The ground fails to show error.

The remaining special grounds complain of alleged errors of commission or of omission in the charge of the court. When

the excerpts from the charge complained of are considered in the light of the charge as a whole and the facts of the case, none of them shows cause for a reversal of the judgment. The various cases cited in behalf of the movant are distinguished by their particular facts from this case. The denial of a new trial was not error. `

*Judgment affirmed. MacIntyre and Gardner, JJ., concur.*